UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANCISCO RAMOS; MARINA RESTO, individually and the legal conjugal partnership formed by them; FRANCISCO CORTEZ, ADA MORENO, individually and the legal conjugal partnership formed by them; EFRAIN GONZALEZ, MIGDALIA BERDECIA, individually and the legal conjugal partnership formed by them; JOSE COLON, MIRTA RIVERA, individually and the legal conjugal partnership formed by them; MYRNA FONT; VENANCIO RODRIGUEZ, MARIA RODRIGUEZ, individually and the legal conjugal partnership formed by them; and ANGEL MUÑOZ, ALMA PEREZ, individually and the legal conjugal partnership formed by them, * <br><br> Plaintiffs, <br><br> v. <br><br> VOLVO CAR CORPORATION; TREBOL MOTORS CORPORATION; TREBOL MOTORS DISTRIBUTOR CORP.; CONCHITA NAVARRO DE GONZALEZ, and RICARDO GONZALEZ NAVARRO, <br><br> Defendants. | Civil No. 96-1922 (JAF) |

----------------------------------*

**OPINION AND ORDER**

Plaintiffs, Francisco and Marina Ramos; Francisco and Ada Cortez; Efraín and Migdalia González; José and Mirta Colón; Myrna Font; Venancio and María Rodríguez; and Angel and Alma Muñoz, bring this action against Defendants, Volvo Car Corporation ("VCC"); Trebol

Civil No. 96-1922 (JAF)                                            2-

Companies ("Trebol"); and Ricardo and Conchita González ("the González Defendants"), alleging violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962 (1984). We have before us cross-motions for summary judgment.

### I. Brief Factual Background

Plaintiffs allege that Defendants engaged in a long-term conspiracy to obtain money from Plaintiffs by misrepresenting or failing to disclose the true cost, model, price, and any dealer-added accessories of Volvo cars which Defendants sold in Puerto Rico. Plaintiffs allege perpetuation of the scheme by mail, wire, and bank fraud, and money laundering. Plaintiffs contend that the conspiracy tricked Puerto Rico consumers into paying inflated prices for Volvo cars through the use of fraudulent factory invoices and misrepresentations of models made on vehicle disclosure stickers placed on the windows of the vehicles in violation of federal and state disclosure laws. See 15 U.S.C. §§ 1231-1233 (1997) and 23 L.P.R.A. §§ 1021-1034 (1987), repealed by 1192 P.R. Laws Act 80.[1]

Plaintiffs contend that Defendants used a Liechtenstein entity, Auto Und Motoren Ackteingesellschaft ("AUM"), a sham company, to cover up the fraud and launder the proceeds. Plaintiffs maintain that AUM performed no legitimate business and had no assets besides the illegal proceeds Defendants funneled through it. The alleged

_____

[1]In 1992, Puerto Rico enacted a new statute changing the party who is responsible for affixing the label from the manufacturer to the "importer or distributor." See 1992 P.R. Laws Act 80, § 2.

Civil No. 96-1922 (JAF)                                              3-

scheme was that Defendants sent out two invoices, one to Trebol in

Puerto Rico and one to AUM in Liechtenstein.  AUM would, in turn, pay

VCC for the invoice and submit an inflated invoice for the same

vehicle to Trebol.  Trebol would then pay the higher invoice to AUM

which would keep the difference between the invoices.  According to

Plaintiffs, the inflated invoice amount would then be reflected on

the cars' vehicle stickers, and the consumers would end up paying

that amount.  Additionally, Plaintiffs allege that Defendants, by

adding accessories or changing emblems, misrepresented the true model

and price of the cars they sold.

## II. Procedural Synopsis

This case has a tortured procedural past, as it has been lurking

in the halls of this federal court for nearly a decade.  In 1991,

different plaintiffs, on behalf of themselves and "all other persons

who, as a direct result of defendants' scheme . . . bought from the

defendants motor vehicles of the Volvo model 240 GLE and/or any other

Volvo models," brought a suit against Defendants alleging RICO

violations.  The basic contention of these plaintiffs was that

defendants, over a seven-year period, defrauded customers by selling

Volvo DL models which were "doctored" by Trebol in Puerto Rico to

look like the more expensive GLE model ("model fraud").  The alleged

predicate acts included financial fraud, telephone, wire, and mail

communications among the defendants in order to achieve the

conspiracy to defraud.  After ordering a more particularized

Civil No. 96-1922 (JAF)                                                    4-

statement of Plaintiffs' RICO claim, the court denied the request for

class certification and dismissed the complaint for failure to plead

the predicate acts of mail and wire fraud with sufficient

particularity. See Rodríquez-O'Ferral v. Trebol Motors Corp., Civ.

No. 91-1604, 1993 WL 261993 at *1 (D.P.R. Sept. 14, 1992), aff'd, 998

F.2d 1001 (1st Cir. 1993).    During the pendency of the appeal,

Plaintiffs' attorneys were sanctioned for filing a groundless action

pursuant to FED. R. CIV. P. 11. See Rodríquez-O'Ferral v. Trebol Motors

Corp., 154 F.R.D. 33 (D.P.R. 1994), aff'd. sub nom O'Ferral v. Trebol

Motors Corp., 45 F.3d 561, 563 (1st Cir. 1994).

       On June 16, 1992, a second group of plaintiffs, using the same

attorneys as the Rodríquez-O'Ferral plaintiffs, filed a suit with

identical RICO claims.    At this time, the Rodríquez-O'Ferral lawsuit

was still pending.    The plaintiffs in the second case sought class

certification for themselves and "all other persons who, as a direct

result of defendants' scheme, . . . bought or acquired from

defendants motor vehicles of the Volvo model 240 GLE and/or any other

Volvo model."    Plaintiffs amended the complaint, which alleged the

same scheme and predicate acts as Rodríquez-O'Ferral, to add a cause

of action for violation of the disclosure obligations of the Federal

Automobile Disclosure Act, 15 U.S.C. §§ 1231-1233 and Puerto Rico's

companion law, Law No. 77, 23 L.P.R.A. §§ 1021-1034.

       On the eve of trial, the González Defendants and Defendant

Trebol consented to the entry of a default judgment, and the case

Civil No. 96-1922 (JAF)                                                    5-

against Defendant VCC went to the jury.  After a month-long trial,
the jury decided in favor of the Plaintiffs.  The First Circuit
reversed as to Defendant VCC and ordered judgment to be entered for
VCC. See Bonilla v. Trebol Motors Corp., Civ. No. 92-1795 (D.P.R.
Oct. 10, 1996), reversed sub nom Bonilla v. Trebol Motors Corp., 150
F.3d 62 (1st Cir. 1998), cert. denied, 119 S.Ct. 1574 (1999).

Following the trial, the court entered a final judgment against
all Defendants and for trebled damages in the amount of $129,591,300
pursuant to 18 U.S.C. § 1964(c) (1984).    Defendant    Trebol
subsequently filed for bankruptcy. The González Defendants and
Defendant Trebol are currently engaged in settlement discussions in
the Bonilla case.[2]

Plaintiffs filed the instant action on July 29, 1996, four days
after the verdict in Bonilla.  Plaintiffs purport to represent all
persons who have purchased Volvo motor vehicles of the 700, 800, and
900 series.  Defendant VCC contends that all of these persons were
included in the proposed class definitions of the aforementioned
cases.  Plaintiffs allege that Defendants committed a series of

---

[2]We note that Plaintiffs' lawyers have made a misrepresentation
to this court concerning the status of these settlement proceedings.
At this time, there has been no final settlement, and Plaintiffs'
attorneys have represented to us that one exists. See Docket Document
No. 109, p. 3 ("As part of the recent Bonilla settlement, [Defendant
Ricardo González] has agreed to make himself available for trial in
[this case]." )    We vehemently state our abhorrence for such
surreptitious practices and caution, upon threat of serious
sanctions, Plaintiffs' attorneys from making any further
misrepresentations to this court.

Civil No. 96-1922 (JAF)                                                    6-

intertwined frauds, including model fraud, modifying vehicles after they leave the manufacturing plant to create "fake" models; sticker fraud, omitting or misrepresenting the information required to be listed on the disclosure stickers; price fraud, charging more than the car is worth; bank fraud/money laundering, using duplicate invoices; and excise fraud, using a more favorable formula to determine the importation tax of vehicles.  Plaintiffs also allege a state contractual claim and a claim under the doctrine of unjust enrichment.

Defendant VCC moved to dismiss Plaintiffs' Third Amended Complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6), and for failure to plead fraud with the particularity required by FED. R. CIV. P. 9(b).

Subsequently, Defendant VCC thrice moved to dismiss with prejudice pursuant to FED. R. CIV. P. 37(d).  First, Defendant sought to dismiss the claims of Plaintiffs Francisco Ramos, Francisco Cortez, Ada Moreno, José Colón, Mirta Rivera, and Myrna Font, for failure to attend their depositions.  Defendant then moved to dismiss the claims of Plaintiffs Francisco Ramos, Francisco Cortez, and Myrna Font for failure to respond to interrogatories and requests for production of documents.  Lastly, Defendant VCC sought to dismiss with prejudice for failure to produce evidence or, in the alternative, Defendant requested an order barring Plaintiffs' use of evidence which they had allegedly failed to provide during discovery.

AO 72
(Rev 8/82)

Civil No. 96-1922 (JAF)                                                          7-

Defendant VCC now moves for summary judgment alleging that Plaintiffs have not offered evidence to support the RICO claim against VCC based on (1) the model fraud theory; (2) the tax fraud theory; (3) the price fraud theory; (4) the sticker fraud theory; or (5) the bank fraud/money laundering theory. Additionally, Defendant alleges that Plaintiffs' state law contract claim is not applicable to it and the equitable doctrine of unjust enrichment is not available to Plaintiffs. Defendant requests costs and attorney's fees.

Plaintiffs opposed the motion alleging that: (1) they have properly pled a RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) for which the commission of predicate acts is not required; and (2) they have access to additional evidence which was not available during the prior lawsuits which will conclusively prove their claims.

Plaintiffs cross-moved for partial summary judgment making a large number of factual allegations.

### III. Summary Judgment Standard[3]

"The core purpose of summary judgment is to 'pierce the boilerplate of the pleadings' and examine the parties' proof to determine whether a trial actually is necessary." Vega-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997) (quoting Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992)).

---

[3]We address the summary judgment motions so as not to deal with repetition of arguments or issues.

Civil No. 96-1922 (JAF)                                              8-

Therefore, if the pleadings, depositions, answers to interrogatories, admissions, and any affidavits on file show that there is no genuine issue as to a material fact, then the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c).

    Where the moving party does not have the burden of proof at trial, that party must make a showing that the evidence is insufficient to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the initial showing has been made, it is up to the nonmoving party to establish the existence of a genuine disagreement as to some material fact. See United States v. One Parcel of Real Property with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992). In this context, "genuine" means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a "material fact" is one which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 257 (1986). Throughout this analytical process, any doubt as to the existence of a genuine issue of fact should be resolved against the moving party, see Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970), and courts "must view the evidentiary record in the light most hospitable to the nonmovant and must indulge all reasonable inferences in his favor." Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991); Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

Civil No. 96-1922 (JAF)                                                    9-

## IV. *Res Judicata* and Full Faith and Credit

The fundamental doctrine of *res judicata* rests at the core of our judicial system.[4]   The doctrine prohibits a claim from being litigated repetitiously outside of the normal appeals process and furthers the goals of finality and certainty by the application of the doctrine.   Standing alongside the fundamental doctrine of *res judicata* is the constitutional mandate that all courts in the United States, in general, must give full faith and credit to the decisions of other courts, be they territorial, state, federal or special tribunals. <u>See</u> U.S. CONST. art. IV, § 1.[5]   The full faith and credit principle also promotes the goals of certainty, finality, and comity in legal dealings within our nation.

For *res judicata* to apply, three requirements must be met: "(1) a final judgment on the merits in an earlier action;   (2) a sufficient identity between the parties in the two suits;   and (3) a sufficient identity of the causes of action in the two suits." <u>Ortiz-Cameron v. Drug Enforcement Admin.</u>, 139 F.3d 4, 5 (1st Cir. 1998) (citing <u>Porn v. National Grange Mut. Ins. Co.</u>, 93 F.3d 31, 34 (1st

---

[4]*Res judicata* is a "general and well-established doctrine . . . conceived in the light of the maxim that the interest of the state requires that there be an end to litigation--a maxim which comports with common sense as well as public policy." <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 401 (1981) (quoting <u>Reed v. Allen</u>, 286 U.S. 191, 198-99 (1932)).

[5]The Clause provides that "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State." U.S. CONST. art. IV, § 1.

Civil No. 96-1922 (JAF)                                            10-

Cir. 1996)).  "Under the federal law of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were raised or could have been raised in that action." <u>Apparel Art Int'l, Inc. v. Amertex Enter. Ltd.</u>, 48 F.3d 576, 583 (1st Cir. 1995).

Moreover, "[t]he dismissal for failure to state a claim under FED. R. CIV. P. 12(b)(6) is a 'judgment on the merits.' " <u>Moitie</u>, 452 U.S. at 399, n.3 (citing <u>Angel v. Bullington</u>, 330 U.S. 183 (1946), and <u>Bell v. Hood</u>, 327 U.S. 678 (1946)).  The rationale behind such apparently harsh results for those with a valid suit who may plead poorly the first time around but later correct their mistakes is the liberal reading federal judges may give to the original pleadings and the more-than-adequate opportunity for amendment afforded by the Federal Rules. <u>See</u> 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE, § 4439 (1981).

### V. Civil RICO Conspiracy

Congress enacted the civil RICO statute, 18 U.S.C. §§ 1961-1968, to "forbid persons from conducting the affairs of an enterprise through a pattern of engaging in the predicate crimes." <u>Bennett v. Berg</u>, 685 F.2d 1053, 1061 n.10 (8th Cir. 1982), <u>aff'd and rev'd in part</u>, 710 F.2d 1361 (8th Cir. 1983) (en banc).  To recover in a civil suit under RICO, a plaintiff must prove that the defendants engaged in certain "prohibited activities," each of which requires the proof of a "pattern of racketeering activities" as a threshold issue. 18

Civil No. 96-1922 (JAF)                                                11-

U.S.C. § 1962 (1984).  The definition of "racketeering activity"

includes, inter alia, mail fraud, 18 U.S.C. § 1341;  wire fraud, 18

U.S.C. § 1343 (1985); and fraud in the sale of securities, 18 U.S.C.

§ 1961(1) (1984). A "pattern" requires "at least two acts of

racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5)

(1984).  The plaintiff must prove that he or she was "injured in his

business or property by reason of a violation" of the statute. 18

U.S.C. § 1964(c) (1984).  The statute can be used against traditional

"mobster" enterprises, as well as "legitimate" businesses which are

being misused for illegitimate ends. See Sedima, S.P.R.L. v. Imrex

Co., 473 U.S. 479 (1985).

        "Civil RICO is an unusually potent weapon – the litigation

equivalent of a thermonuclear device.  The very pendency of a RICO

suit can be stigmatizing . . . ." Miranda v. Ponce Fed. Bank, 948

F.2d 41, 44 (1st Cir. 1991).  Nonetheless, the language of the statute

is not very helpful in providing courts with a practical yardstick

with which to measure allegedly violative behavior.  The development

of a meaningful definition of the term "pattern" has been

particularly elusive.  In H.J. Inc. v. Northwestern Bell Tel. Co.,

492 U.S. 229 (1989), the Supreme Court developed a test to determine

whether a pattern exists for purposes of RICO.  The Court held that

the RICO plaintiff (or prosecutor in criminal actions) must show

"continuity and relationship," between the racketeering predicates

their threat of continued criminal activity." Id. at 239.

Civil No. 96-1922 (JAF)                                          12-

In a civil RICO proceeding, the plaintiff must allege with particularity and prove specific intent to defraud. See FED. R. CIV. P. 9(b). However, there is an apparent laxity in other necessary showings to soften the blow of proving intent. For example, an affirmative misrepresentation is not required because the violation is found in the deceptive scheme itself. See Atlas Pile Driving Co. v. DiCon Fin. Co., 886 F.2d 986 (8th Cir. 1989). Additionally, federal jurisdiction can be obtained through mailings that were routine and accurate, so long as the mailings were anticipated, see United States v. Serino, 835 F.2d 924, 928 (1st Cir. 1987), and Defendants do not have to be the persons who made the mailings. See United States v. Cotenti, 735 F.2d 628, 631 (1st Cir. 1984); see also United States v. Fermin Castillo, 829 F.2d 1194, 1198 (1st Cir. 1987). Finally, courts have held that use of the mail system does not need to occur concurrently with the alleged fraud for the statute to apply. See, e.g., Sun Sav. & Loan Ass'n. v. Dierdorff, 825 F.2d 187 (9th Cir. 1987) (citing United States v. Sampson, 371 U.S. 75 (1962)); Zola v. Gordon, 685 F.Supp. 354, 372-73 (S.D.N.Y. 1988).

To recover damages, the plaintiff must prove that she is the person directly affected and that the damages are a proximate cause of defendant's violation. See Holmes v. Securities Investor Protection Corp., 503 U.S. 258 (1992), reh'g. denied, 112 S. Ct. 2047 (1992). The injury must originate from the predicate acts, as defined in section 1961(1). See Imrex Co., 473 U.S. at 495; Pujol v.

Civil No. 96-1922 (JAF)                                                13-

*Shearson/Am. Express, Inc.*, 829 F.2d 1201, 1205 (1st Cir. 1987); *Ortiz*

*Villafane v. Segarra*, 797 F.2d 1 (1st Cir. 1986) (per curiam).

## VI. Analysis

For organizational purposes, we shall deal with the motions in

the order in which they were filed, i.e., Defendant VCC's summary

judgment motion and then Plaintiff's summary judgment motion.

However, before we begin an issue-by-issue analysis, we turn to the

more fundamental issue of *res judicata*. We find that at least two

requisites for *res judicata* to apply have been met: a sufficient

identity between the parties in the two suits, and a sufficient

identity of the causes of action in the two suits. There is

sufficient identity between the parties because in the earlier

*Bonilla* class action, the class of plaintiffs included "all other

persons who, as a direct result of defendants' scheme, . . . bought

or acquired from defendants motor vehicles of the Volvo model 240 GLE

*and/or any other Volvo model*." (emphasis ours). This class clearly

encompasses Plaintiffs, and the Defendants in both actions are the

same parties, VCC, Trebol, and the González Defendants.

Additionally, there is a sufficient identity between the causes of

action in the two suits: both are civil RICO cases alleging a scheme

to defraud Puerto Rico consumers by overcharging them for Volvos.

Noting that two of the three prongs for *res judicata* are satisfied,

we address each contention in turn.

Civil No. 96-1922 (JAF)                                                    14-

## A.    Model Fraud

Defendant VCC maintains that there is no evidence to support a civil RICO cause of action against it based on a model fraud theory. Grounding its argument on the previous First Circuit decision, Defendant contends that the conduct charged by Plaintiffs - failure to disclose that emblems and accessories on their vehicles may have been locally installed - even if true, does not constitute fraud.

Plaintiffs respond that the model fraud claim is that Defendants defrauded them by misrepresenting that GLE models were factory models when in fact they were simply base DL models imported to Puerto Rico and then upgraded by adding different wheels and affixing the GLE emblem.    According to Plaintiffs, the cost of these vehicles was disproportionate to the costs of the additions.    Specifically, Plaintiffs claim that Defendant VCC was aware of this practice at least for the year 1992.

There is both a federal, 15 U.S.C. §§ 1231-1233, and a local, 23 L.P.R.A. §§ 1021-1034,[6] auto disclosure law which prohibit making false representations on vehicle disclosure stickers placed in the windows of vehicles at the time of sale.    The disclosure laws require the automobile manufacturer to affix a label to the windshield which discloses, inter alia, the model of the vehicle. See 15 U.S.C. § 1232 (requiring information such as the suggested retail price, the price

--------

[6]We note that 23 L.P.R.A. §§ 1021-1034 was repealed on October 17, 1992 by No. 80, § 14.

Civil No. 96-1922 (JAF)                                        15-

for each accessory or optional equipment, and transportation
charges). Thus, Plaintiffs contend that by switching emblems on
vehicles with marginal upgrades and then listing the vehicles as the
more expensive models, Defendants violated the disclosure laws as to
the actual model of the vehicles.

The First Circuit was presented with a similar issue in <u>Bonilla</u>
and concluded that the customers knew that they were getting a
Swedish-made Volvo of a certain series with certain, particularized
accessories. In other words, a 200-series is a 200 series and the
different emblems merely relate to the accessories or luxuries of the
particular vehicle. So, the issue with which the First Circuit was
faced was whether it was of any consequence that certain accessories
were installed in Puerto Rico rather than in Sweden.

That is essentially the same issue we are facing. We must
determine whether Defendant VCC as the manufacturer is liable for the
allegedly false model information that was on the disclosure
stickers. The reason the model information is purportedly untrue is
because Defendants equipped the less expensive models with some
accessories and then allegedly inflated the costs and changed the
model emblem to a more costly alternative within the same series. As
in the <u>Bonilla</u> case, "[P]laintiffs have not shown that the vehicle
price or the nature of the car's luxuries were unknown to them."
<u>Bonilla</u>, 150 F.3d at 70. Plaintiffs received cars from a certain
series with particular accessories. Like the First Circuit, we fail

Civil No. 96-1922 (JAF)                                    16-

to find a case of model fraud against Defendant VCC on these facts.

Furthermore, we find that *res judicata* bars relitigation of this

claim because there is a final judgment on the merits in the <u>Bonilla</u>

action. <u>See</u> <u>Apparel Art Int'l. Inc. v. Amertex Enter. Ltd.</u>, 48 F.3d

at 583.

**B.   <u>Tax Fraud</u>**

Plaintiffs' tax fraud theory consists of two separate

allegations: (1) that Defendant VCC made false representations to

Puerto Rico tax authorities concerning the horsepower and/or vehicle

weight of its vehicles from 1983-1990; and (2) that Defendant VCC

submitted false information to Puerto Rico tax authorities concerning

the actual factory cost of each Volvo sold here.

We find, and Plaintiffs implicitly agree, that the horsepower

and vehicle weight issues are precluded by the <u>Bonilla</u> decision. <u>See</u>

<u>Bonilla</u>, 150 F.3d at 67.   Plaintiffs are attempting to present us

with the exact same issue which is exactly what the doctrine of *res*

*judicata* bars. <u>See</u>, *e.g.*, <u>Moitie</u>, 452 U.S. at 401 (noting that at

some point a case must end).   However, Plaintiffs submit that they

should be permitted to present evidence of such a scheme in order to

prove Defendant's specific intent to defraud pursuant to FED. R. EVID.

404(b).   We decline from ruling on this matter at the moment and

invite Plaintiffs to revisit it at a later time.

As to the factory cost issue, Defendant VCC maintains that there

is no evidence in the record to support the claim or evidence that

Civil No. 96-1922 (JAF)                                        17-

Plaintiffs were injured by such alleged false reporting practices. Plaintiffs do not offer any evidence to dispute Defendant's allegation. As such, we find there is no genuine issue of material fact with regards to the claim and grant summary judgment on the tax fraud issue for lack of standing.

**C.    Price Fraud**

Defendant VCC contends that Plaintiffs have not proven a price fraud claim. Plaintiffs allege that their Volvos were overpriced compared with the cost of the equivalent car in the continental United States and that Defendant VCC actively sought to charge inflated prices in Puerto Rico. However, in Bonilla, the First Circuit explicitly held that:

> Assuming that Volvo was aware that Trebol's retail prices exceeded those of comparably equipped Volvo cars on the mainland, such a price disparity is not itself fraud . . . there is nothing in the law of fraud that prevents even a single seller from charging different markups in different markets so long as there is no affirmative misrepresentation.

Id. at 71. Recognizing the preclusionary impact of that decision, Plaintiffs now seek to circumvent it and introduce essentially the same information as evidence of the specific intent to defraud. In other words, Plaintiffs are willing to forfeit the claim, but seek to introduce the evidence to support the fraud claim. Again, we refrain from ruling on that evidentiary issue at this time, but do grant summary judgment as to a price fraud claim against Defendant VCC.

Civil No. 96-1922 (JAF)                                                    18-

**D.    Sticker Fraud**

Defendant VCC maintains that Plaintiffs have failed to provide evidence that the information provided in their disclosure stickers was incorrect.   It alleges that there are merely two disclosure stickers from two different Plaintiffs' vehicles and no further evidence of fraud.   Furthermore, Defendant VCC contends that even if the stickers were fraudulent, there is no evidence that it knew of the content of the stickers.   Plaintiffs respond that Defendant VCC was the party responsible for the stickers and that Defendant González specifically informed Defendant VCC of the obligation and, therefore, Defendant VCC is liable for faulty information on the stickers.

We find that Plaintiffs have not made the requisite showing of Defendant VCC's liability in this instance.   While it is true that Defendant VCC had entrusted to Defendant Trebol its duty to fill out the disclosure stickers, there is absolutely no evidence that VCC was aware of false statements on the stickers.   This is exactly the issue which the Circuit addressed in Bonilla.  See Bonilla, 150 F.3d at 73-76 (concluding that there was insufficient evidence to conclude that VCC participated in scheme to defraud with the disclosure stickers). And, again we are faced with no evidence of Defendant VCC's knowledge of the scheme, or even that the stickers contained false statements. Inflated prices in different markets, without more, does not magically become fraud.   Even if VCC was shirking its obligation

Civil No. 96-1922 (JAF)                                                    19-

under the disclosure laws during the period in which the manufacturer

was responsible for sticker's accuracy, that is not a civil RICO

case.[7]  We grant Defendant VCC's motion on this point.

## E.    **Bank Fraud/Money Laundering Theory**

The essence of Plaintiffs' bank fraud/money laundering claim is

that Defendants were engaged in a double-invoicing scheme where VCC

would invoice both AUM and Trebol.  AUM would then pay VCC the

invoice amount and invoice Trebol for a higher amount.  The net

result would be that the consumer paid the inflated amount which was

collected and stored at AUM.  The difference allegedly went into

Defendants' pockets.

This is the same information which the First Circuit considered

and rejected.  See Bonilla, 150 F.3d at 72-73 (concluding that "there

was little reason for [VCC] to [participate in such a fraud] absent

proof . . . that [VCC] got more than its original invoice price").

There is no allegation that VCC received more than its original

invoice price or that VCC participated in the alleged money

laundering scheme.  Plaintiffs attempt to circumstantially paint a

picture of VCC's knowledge of the alleged double-invoicing scheme and

facilitation by sending invoices to AUM.  However, there is no proof

that VCC was aware of AUM being a sham company, much less a money

_____

[7]We are not deciding whether VCC or Trebol is the party
responsible for the disclosure stickers under the laws.  We need not
go that far to reach our conclusion.

Civil No. 96-1922 (JAF)                                                    20-

laundering scheme.  We find that *res judicata* bars the relitigation of this claim and grant Defendant VCC's motion on this issue.

**F.    State Law Claim**

Plaintiffs bring a state law claim requesting that we declare the sales contracts between them and Trebol null pursuant to Article 1255 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3154 (1991).[8] Plaintiffs ask that we declare the contracts to be null and order the return of the purchase price of each of the vehicles, plus interest. On the other hand, Defendant VCC maintains that it is not liable because it was not a contracting party to the purchase and sale agreements for the cars, and the statute specifies that findings of nullity are binding only upon the contracting parties. See 31 L.P.R.A. § 3154.

Looking to the plain words of the statute, we find that Defendant VCC is not liable for a nullity of contract claim pursuant to 31 L.P.R.A. § 3154.  Defendant was not a contracting party. Plaintiffs allege that because this is a case of fraud, the rules change and they can bring an action for restitution against all participants in the fraud pursuant to Puerto Rico's general tort

---

[8]Section 3154 provides, in relevant part:

> When the nullity of an obligation has been declared, the contracting parties shall restore to each other the things which have been the object of the contract with their fruits, and the value with its interest . . . .

31 L.P.R.A. § 3154.

Civil No. 96-1922 (JAF)                                              21-

statute, 31 L.P.R.A. § 5141 (1991). Even if that were true,
Plaintiffs would be seeking the contractual remedy of section 3154
for a violation of the tort statute. We view this as a blatant
attempt at obfuscation. Plaintiffs can not conflate and commingle
different statutes in order to fashion a viable cause of action.

**G.** **Unjust Enrichment**

In the alternative, Plaintiffs make a claim for unjust
enrichment alleging that Defendants wrongfully obtained money and
property belonging to them. Defendants maintain that the doctrine of
unjust enrichment is not available to Plaintiffs because there was a
contract. See Umpierre Del Valle v. Torres Díaz, 114 D.P.R. 449, 462-
63 (1983).

We need not reach any lofty discussions of implied-in-law
contracts in the instant case as we simply do not find that Defendant
VCC was unjustly enriched. There is no evidence that Defendant VCC
received any unjust benefit in its transactions with the other
Defendants. We grant Defendant VCC's summary judgment motion on this
issue.

**H.** **Plaintiffs' Partial Summary Judgment Motion**

Plaintiffs submit a motion for partial summary judgment which
contains a variety of issues. Defendant VCC is the only Defendant to
have responded to the motion. However, since we are granting
Defendant VCC's motion for summary judgment, we decline to address
this motion without a response from the other Defendants.

Civil No. 96-1922 (JAF)                                                    22-

### V. Conclusion

1

2    In accordance with the foregoing, we **GRANT** Defendant VCC's

3    motion for summary judgment.  Defendant VCC is no longer a party to

4    this lawsuit.  Additionally, we **ORDER** all remaining Defendants to

5    respond to Plaintiffs' motion for partial summary judgment **within**

6    **fifteen (15) calendar days**.  This Opinion and Order disposes of

7    Docket Documents Nos. 47, 57, 78, 82, 86, 92, 94, 95, 99, 103, 104,

8    106, 109, 115, and 121.

9

     **IT IS SO ORDERED.**

10

11   San Juan, Puerto Rico, this _____ day of May, 2000.

12

13                                    JOSE ANTONIO FUSTE
                                      U. S. District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26